IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 16-0159 WHA |
| Plaintiff, | |
| v. | |
| STANISLAV PETROV, | **ORDER DENYING MOTIONS TO SUPPRESS** |
| Defendant. | |

## INTRODUCTION

In this criminal case charging defendant with various crimes involving possession of a firearm and possession of methamphetamine, defendant moves to suppress the fruits of searches of a room occupied by him and of a subsequent search of his cell phone. For the reasons stated below, both motions are **DENIED**.

## STATEMENT

On March 8, 2016, our Judge Joseph Spero issued a search warrant based on an affidavit of an agent of the Federal Bureau of Investigations in Sacramento. The affidavit described alleged cybercrime activities of Anthony Colon, who used the handle "Petrovski." The affidavit alleged that Colon resided at 23 Teddy Avenue in San Francisco and sought a search of the premises for Colon and instrumentalities of his alleged crimes. The warrant covered the entire premises of 23 Teddy and authorized the seizure of all "[c]omputers or storage media used as a means to commit" the cybercrimes allegedly committed by Colon. The warrant defined

1  "computer" to include "mobile phones" (Def.'s Reply, Exh. A).  The warrant made no mention
2  of defendant Stanislav Petov, his co-defendant Milagro Moraga, drugs, or firearms.

3      FBI agents from Sacramento then joined a team of FBI agents from San Francisco with
4  several officers from the San Francisco Police Department to execute the warrant.  While
5  conducting the search of 23 Teddy, officers entered a room, which the search team designated
6  "Room I" in which Petrov and Moraga were asleep near several visible bags that appeared to
7  contain methamphetamine.  The officers woke Petrov and Moraga, removed them to a separate
8  room on the premises, then continued to search Room I (and the rest of the premises).

9      In conducting the search of Room I, the officers found three laptops and a small digital
10 storage card, which they seized pursuant to the warrant.  The officers also found more drugs, a
11 pistol, large sums of cash, a pay-owe sheet, and two cell phones, which phones both belonged to
12 Petrov.  Elsewhere in the residence, FBI agents seized a laptop plus a small storage drive.

13     Colon was not found at 23 Teddy.

14     While still on the premises, several FBI agents requested permission to use one of
15 Petrov's cell phones to contact Colon while pretending to be Petrov.  Petrov consented and
16 showed the officers a history of text messages between himself and Colon on one phone.
17 Petrov looked through his second phone but stated he could not find any further information
18 relating to Colon (Dkt. No. 69, Exh. A).  The officers then used Petrov's cell phone to
19 communicate with Colon for approximately two hours.  Near the conclusion of the exchange
20 with Colon, FBI Special Agent Michael Cahoon searched Petrov's phone for evidence relating
21 to the cybercrime activities that were the subject of the search warrant while Petrov sat nearby.
22 Special Agent Cahoon did not find any such evidence on the phone he searched (Cahoon Decl.
23 ¶ 12).

24     Both of Petrov's phones were then handed off to Officer Chan.  The FBI agents declined
25 to investigate the drugs and pistol found in Room I, preferring instead to continue to search for
26 evidence pertaining to Colon (and for Colon himself), but Officer Chan decided to investigate
27 the drugs and weapons found in Room I.

28

2

Officer Chan read Moraga and Petrov their *Miranda* rights and conducted recorded interviews of both while still at 23 Teddy. Moraga stated that she and Petrov had been room sitting for several weeks. Petrov equivocated about the duration of his stay but stated that Room I and most of the items, including the drugs and paraphernalia in the room belonged to Colon. In his declaration in opposition to this motion, Officer Chan states that after he turned off the recorder, he asked if he could search Petrov's phones, to which Petrov purportedly responded "yeah" (Chan Decl. ¶ 14). The remaining officers then searched Petrov's phone and found various videos indicating his possession of the drugs and the pistol.

Upon concluding the interviews, Chan believed he had probable cause to arrest both Petrov and Moraga based on the drugs and firearm seized from the room they occupied. He arrested them and arranged for their transportation to the police station.

Petrov now moves to suppress the fruits of the officers' search of the room he occupied at 23 Teddy. He separately moves to suppress the fruits of the search of his cell phones. This order follows full briefing and oral argument.[1]

**ANALYSIS**

**1.    SEARCH OF 23 TEDDY.**

Petrov acknowledges that, assuming the validity of the warrant as to Colon, the officers were lawfully searching the room in which they discovered the bags of methamphetamine. He contends that once the officers discovered the bags of methamphetamine, they were required to procure a new warrant in order to search the room that he and Moraga occupied for evidence relating to their alleged drug and firearm violations.

Petrov simply ignores the fact that the search warrant already authorized the FBI agents to search the entire premises of 23 Teddy and to seize any computers or storage media used as a means to commit the violations alleged to have been committed by Colon. This included small memory cards and thumb drives that could have easily been hidden. Furthermore, Petrov

---

[1] Petrov initially joined in Moraga's motion for a *Franks* hearing concerning the veracity of the affidavit offered in support of the warrant to search 23 Teddy. While all three motions remained pending, Moraga withdrew her Franks motion. Petrov was given extra time to complete the briefing on the *Franks* motion once Moraga withdrew the motion, but he ultimately decided not to pursue that motion (Dkt. No. 107).

3

himself told the police that Room I and most the items in that room all belonged to Colon, underscoring the propriety of the search of that room for evidence relating to Colon's alleged crimes.

Because the officers were lawfully searching Room I, the discovery and seizure of any evidence with an immediately apparent incriminatory nature in the course of that search did not need to be authorized by a further warrant. *Roe v. Sherry*, 91 F.3d 1270, 1272 (9th Cir. 1996). There is no dispute that the incriminating nature of the drugs and firearm seized was immediately apparent or that they came within the plain view of the officers while conducting the search. Petrov's theory is that the officers could not conduct the full search authorized by the warrant once they discovered evidence that gave them probable cause to arrest or search the room on drug and firearm charges (as opposed to evidence relating to Colon), "it was incumbent upon them to return to [Judge Spero] and seek an appropriate warrant" (Def.'s Mtn. Re 23 Teddy at 5). Petrov's approach is absurd. It would invite occupants of the premises subject to a search warrant to undertake new illegal activity simply to thwart the execution of an otherwise lawful search. The law does not require such a backwards procedure.

The only authority cited by Petrov is not on point. In *United States v. Davis*, 332 F.3d 1163 (9th Cir. 2003), the owner of a residence consented to the search of the premises while an overnight guest stayed in one of the rooms there. *Davis* held the owner's consent to the search did not constitute consent to search the room occupied by the guest. That is not our case.

Here, the issue is not consent. No consent was sought or needed for the room search, because the search was authorized by the warrant. The warrant authorized the search of 23 Teddy as a whole for certain evidence of Colon's alleged cybercrimes. The fact that the officers executing the search warrant discovered evidence of different crimes allegedly committed by different people during that search did not subtract from that authority. Petrov's motion to suppress the fruits of the search of 23 Teddy is therefore **DENIED**.

 2. **SEARCH OF PETROV'S CELL PHONE.**

Petrov also seeks to suppress the fruits of the search of his cell phone, contending it constituted an unauthorized warrantless search. The government responds that Petrov

4

consented to the general search of his cell phones — a fact Petrov vehemently disputes — but even so, that the search warrant in fact authorized the search of his phones. This order need not (and does not) resolve the factual dispute concerning whether Petrov consented to the general search of his phone because the search warrant authorized the search of mobile phones that had been used as a means to commit the crimes allegedly committed by Colon.

Petrov argues that the FBI handed Petrov's phone off to Officer Chan because they had concluded the phones would be of no use in the cybercrime investigation of Colon, relying on Agent Cahoon's fruitless search of Petrov's phone. But Special Agent Cahoon's declaration does not show that he concluded that Petrov's phones had never been used in connection with Colon's cybercrimes; it only shows that he failed to discover any such evidence during his search of one of those phones. Nothing precluded the possibility that evidence linking Petrov's phones to Colon's cybercrimes could be found upon a deeper search. Indeed, the fact that Special Agent Cahoon's initial review failed to uncover the evidence sought to be suppressed now shows that his review was not comprehensive. Moreover, it had already been established that Petrov in fact used one of his phones to communicate with Colon, underscoring the possibility that a search of his phone could have yet proven fruitful in executing the warrant.

Petrov responds that the government's contention that his phones were subject to the search warrant is inconsistent with the fact that Petrov's permission was sought first to conduct the ruse involving Colon and later (allegedly) to conduct the general search of his phones. The government responds that officers sought Petrov's permission in the first instance specifically to use his phone in order to impersonate him, not just to conduct a search, and in the latter instance as a precaution. In any case, whether or not the officers believed they needed Petrov's consent to conduct their searches, this order finds such consent was unnecessary because the searches were authorized by the search warrant.[2]

---

[2] Even if the search of Petrov's phones was for the purpose of investigating his alleged drug and firearm crimes without a warrant, the fruits of that search would nevertheless not be subject to suppression, because they would have inevitably been discovered in the search of Petrov's phones regarding his connection to Colon.

5

**CONCLUSION**

For the reasons stated above, Petrov's motions to suppress are **DENIED**.

**IT IS SO ORDERED.**

Dated: November 9, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE